UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAKOB CLAYTON KUHLMAN,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN J. O'MALLEY, et al.,<br><br>Defendants. | Case No. 24-cv-00360-HSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION AND ENTERING JUDGMENT IN DEFENDANT'S FAVOR**<br><br>Re: Dkt. Nos. 1, 7 |

Defendant Martin J. O'Malley, the former Commissioner of the Social Security Administration, acting in his official capacity, denied Plaintiff Jakob Clayton Kuhlman's application for disability insurance benefits under Title II of the Social Security Act. Mr. Kuhlman asks the Court to reverse that decision and grant his benefits. Dkt. No. 1. The Court **DENIES** the motion.

## I. BACKGROUND

Mr. Kuhlman filed a petition for Social Security disability benefits on November 16, 2021, alleging he became disabled the month prior, on October 15, 2021. He was required to show that he became disabled before his disability insurance expired on June 30, 2022. Administrative Record ("AR") 30. He claimed bipolar disorder as his disability. His claim was denied, initially and upon reconsideration. He appealed to an Administrative Law Judge. A hearing was held on September 7, 2023 where he and a vocational expert testified. The ALJ found Mr. Kuhlman was not disabled and the Appeals Council declined to review the application. He seeks review from this Court.

### A. Plaintiff's Condition

Mr. Kuhlman was born in 1984 and first diagnosed with bipolar disorder in 2009. AR 273. He has a bachelor's degree and previously worked as a pest exterminator. AR 54, 57, 70–71. He

1  served in the United States Coast Guard from 2002 to 2012 and was discharged under honorable
2  conditions. AR 776. While pursuing his bachelor's degree following his discharge, he
3  experienced mental health problems which included an inpatient hospitalization and self-injurious
4  behavior. AR 56–57, 477, 500. He currently lives with his wife, who works from home, and their
5  two children. AR 59. In 2021, he was working for a pest control company for 4–6 months before
6  resigning due to his mental health. AR 55. He worked for other pest control companies from
7  2018–2021. AR 56.

8        Mr. Kuhlman testified that he has been combating bipolar disorder since he left the U.S.
9  Coast Guard. AR 57. He described his symptoms as constituting "manic" episodes which occur
10 approximately once a month and last from one to four days at a time. AR 63. When in a manic
11 state, he engages in impulsive behavior and is unable to care for himself. AR 63–64.
12 Alternatively, Mr. Kuhlman described "panic" or depressive episodes which occur daily. During
13 those episodes, he feels dread and anxiety and testified he "feels like [he is] having a heart attack."
14 AR 64–65. Mr. Kuhlman also has a history with anger and irritability, which he says has grown
15 worse in recent years. "I used to be able to have like, you know, be able to calm myself down and
16 think about things . . . . [N]ow, things just seem to blurt out of my mouth before I even have an
17 opportunity to do that." AR 67.

18       Mr. Kuhlman's day-to-day activities include feeding his children meals and "attempt[ing]
19 to pick up the house a little bit." AR 59. He testified that he is easily distracted and easily
20 overwhelmed with small tasks. AR 60. He used to enjoy cooking, but his wife now cooks
21 primarily for the family and he performs a supporting role. AR 60. She also does the laundry and
22 pays the family's bills. AR 61. While he can go to the grocery store alone, his wife writes him a
23 list and stays on the phone with him while he is in the store. AR 61. Overall, he performs 30% of
24 the housework. AR 60.

25       Mr. Kuhlman acknowledged that his medication works to help control some of his
26 symptoms, but he says that it causes fatigue and nausea. *Id.* He testified that whether manic
27 episodes occur depends, in part, on "whether [he is] regularly taking [his] medication for it. That
28

2

1  does affect it." AR 63.  He testified that he is on ADHD medication that "really does help" with
2  his concentration.  AR 66.

### B. Plaintiff's Evaluations and Expert Opinions

Mr. Kuhlman had numerous appointments between August 2021 and the end of 2022 assessing his mental well-being, some related to his Social Security claim.  In August 2021, before resigning from the pest control company, Mr. Kuhlman reported to doctors that he was working eight to ten hours per day, six days a week, which felt unsustainable.  AR 503.  At that time, he said he was considering quitting his job and applying for disability benefits.  *Id.*  He also reported difficultly remembering to take his medication "in a timely fashion."  AR 518.

On October 5, 2021, Mr. Kuhlman had a telemedicine appointment with the mental health clinic at the Veterans Affairs Medical Center.  AR 929.  His chart notations reflected that Mr. Kuhlman sounded accelerated and distracted "but coherent and grateful for the call."  He told the clinic that he was at work when he took the call.  *Id.*  In November 2021 during his annual exam, Mr. Kuhlman told his provider that he was "doing well overall," was stable on medication, and was no longer working.  AR 481.

Mr. Kuhlman was seen regularly by Dr. Kumar Vedantham, M.D., who assessed him in support of his application.  On January 14, 2022, Mr. Kuhlman reported to Dr. Vedantham that he had a manic episode in the last month that lasted a week.  During that episode, he spent excessive money and engaged in risky behavior.  AR 839.  His mental status exam reflected that he was "friendly, appropriate" with "normal speech," in a "fine" mood with "logical, organized, [and] linear" thought process.  AR 840.  Mr. Kuhlman told Dr. Vedantham that he "feels markedly more stable since he stopped working" and that "work significantly destrbilized [sic] his mood."  *Id.*

Dr. Vedantham completed a Mental Disorder Questionnaire in February 2022 at the request of the Social Security Administration.  He assessed Mr. Kuhlman as "appropriately groomed" but said he required his wife's assistance to keep his appointments.  AR 618.  He wrote that Mr. Kuhlman was "either depressed and unproductive or manic and impulsive with poor judgment."  *Id.*  At the same time, he noted that Mr. Kuhlman's current mental status was "pleasant and engaging" with euthymic mood and normal cognitive functions.  AR 619.  Overall,

he assessed that "[d]espite being well engaged in [treatment and] having strong spousal support, [Mr. Kuhlman] remains unreliable [and] inconsistent due to his mood instability." AR 622.

Mr. Kuhlman met again with Dr. Vedantham on March 4, 2022 for a follow-up appointment. Mr. Kuhlman informed his doctor that he recently moved cities and had not experienced significant symptoms. AR 819. Mr. Kuhlman told Dr. Vedantham that he was concerned about symptoms arising after the move because he is "good during the fire, it is afterwards that I get a bit nutty." AR 819. His visit notes show that he reported experiencing anxiety about "anything and everything," and that he tried using SSRI medication but it pushed him into a manic state. *Id.* Despite Mr. Kuhlman's self-assessments, the mental status exam reflected that he was "friendly, appropriate" with "normal speech," in a "pretty good" mood with "logical, organized, [and] linear" thought process. AR 820.

Mr. Kuhlman was seen again in April 2022 and "arrived on time and oriented X3, polite and cooperative with interviewer, mood reported as 'anxious' and affect is congruent, rate of speed [wa]s fast, verbose, and remained on task, motivated, and future focused." AR 777. This time, he told the clinic that the recent move had been "difficult and stressful." *Id.* In June, he met with Dr. Vedantham again. AR 762. Mr. Kuhlman reported that "his current med regimen is working very well for him" and said he wanted to maintain it. AR 763. Dr. Vedantham again noted that Mr. Kuhlman "navigated some major life transitions such as moving without switching to either hypomania or depression. He feels that the addition of [medication] to his mood regimen has been very helpful." AR 764. The mental status exam similarly reflected normal and friendly demeanor with linear thought processes. *Id.* That same day, Dr. Vedantham completed a psychiatric impairment questionnaire indicating he believed Mr. Kuhlman had marked impairments related to remembering and carrying out detailed instructions, maintaining concentration, completing a workday without interruptions from psychological symptoms, accepting instructions from supervisors, and making plans independently. AR 630.[1]

---

[1] Mr. Kuhlman was seen by Dr. Vedantham on August 19, 2022; November 30, 2022; March 27, 2023; and June 21, 2023. These reports were consistent with the appointment notes from before June 30, 2022. *See* Dkt. No. 7 at 5–6.

Several other experts examined Mr. Kuhlman and his medical records in connection with his benefits application. Psychologist Dr. Charles Odipo examined Mr. Kuhlman on March 4, 2022 and diagnosed him with bipolar disorder I, attention deficit hyperactivity disorder, and borderline personality disorder. AR 626. Mr. Kuhlman arrived on time and was driven to the appointment by his wife. AR 624. He reported symptoms reflecting his manic and panic states: sadness, racing thoughts, mood swings, irritability, and poor memory and concentration. AR 624. Dr. Odipo's notes indicate that Mr. Kuhlman "has no difficulty completing household chores" but has a poor relationship with friends and family because of anger management. AR 625. Dr. Odipo observed that "[h]e spoke rapidly and was hyperverbal. He was repeatedly told to slow down. He was hyperactive, impulsive and tended to blurt out answers . . . . He had mild difficulty with attention and concentration. . . . Mood was dysphoric and affect was anxious. Thought process was slow. His concentration was poor." AR 625. Based on his assessment and the medical history, Dr. Odipo determined Mr. Kuhlman had marked impairments in performing complex tasks without assistance but could perform simple repetitive tasks. AR 626. He further found marked impairments in handling normal work-related stress. *Id.* Dr. Odipo found Mr. Kuhlman had moderate restrictions related to his interactions with the public and supervisors and his ability to maintain regular attendance without accommodations. *Id.*

Psychologist Dr. Celina Marciano also examined Mr. Kuhlman on November 2, 2022 (after his Social Security insurance expired). AR 639. She diagnosed him with Major Depressive Disorder, Generalized Anxiety Disorder, and Post Traumatic Stress Disorder. AR 641–45. Her opinion does not reflect any objective findings but largely reflects Mr. Kuhlman's self-reported symptoms and history. AR 639–46.

Two consultative experts examined Mr. Kuhlman's medical record for the purpose of making a non-examining report.[2] AR 82–83, 103. Those consultants found that Mr. Kuhlman had moderate limitations interacting with others, concentrating, persisting or maintaining pace, adapting and managing himself, but had the ability to maintain concentration on simple and

---

[2] Dr. Derek O'Brien and Dr. Catherine Blusiewicz reviewed Mr. Kuhlman's medical record and signed their reports on March 30, 2022 and May 25, 2022. AR 95, 115.

5

detailed tasks for extended periods and could adapt to changes in a work setting. AR 39, 87–91, 108–15. They also opined that Mr. Kuhlman could relate appropriately to peers and supervisors but was better suited for only occasional interaction with the public. *Id.*

At the hearing, vocational expert Dian Haller testified. AR 70–74. In her opinion, an individual who was limited to simple, detailed, but not complex tasks, which do not require a specific production rate, and only requires a level of judgment necessary to make simple work-related decisions; and who may require frequent contact with supervisors and peers but only occasional contact with the public could not be an exterminator. AR 71. She testified that someone with those limitations could work as a housekeeper, laundry laborer, or floor cleaner and polisher. AR 71–72. She testified that if an individual was absent from work two to three times a month, they would be unable to sustain competitive employment, because "[t]hat would be excessive absenteeism." AR 73–74.

### C. The ALJ's Decision

The Administrative Law Judge found that Mr. Kuhlman did not qualify as disabled under Sections 216(i) and 223(d) of the Social Security Act using the sequential five-step process codified in regulation. 20 C.F.R. § 404.1520(a).

*First*, the ALJ must determine whether the claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a). Substantial gainful activity is work activity that involves doing significant physical or mental activities, usually done for pay or profit, regardless of whether a profit is realized. 20 C.F.R. § 404.1572(a)–(b). If a claimant is engaged in substantial gainful activity, the claimant is not disabled. The ALJ found that Mr. Kuhlman was not engaged in gainful activity. AR 30.

*Second*, the Claimant must have a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(c). Impairments are not severe when they establish only slight abnormalities and do not significantly limit an individual's ability to perform basic work tasks. The ALJ found that Mr. Kuhlman's condition, bipolar disorder, is a severe impairment. AR 30–31.

*Third*, the ALJ must determine whether the impairment is of a severity to meet or

medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment is sufficiently severe, then the Claimant is disabled. If not, the analysis proceeds to the next step. The ALJ found that Mr. Kuhlman's impairments were not sufficiently severe to equal the listed impairments. AR 31–32.

*Fourth,* the ALJ must determine the Claimant's "residual functional capacity" (RFC) or his ability to do physical and mental work activities on a sustained basis despite his limitations. In making this determination, the ALJ considers all of a claimant's impairments. Then the ALJ matches those capacities against past relevant work within the last 15 years prior to the date of disability. 20 C.F.R. § 404.1520(f). If the Claimant cannot perform that past work, the process proceeds to the last step.

The ALJ assessed Mr. Kuhlman's RFC and whether it enabled him to perform the tasks of a pest exterminator (his only qualifying employment). AR 31–32. The ALJ found that Mr. Kuhlman had a mild limitation remembering and applying information. In so finding, she discounted Mr. Kuhlman's subjective reports and credited reports from his visits at VA appointments. AR 31. She found Mr. Kuhlman had a moderate limitation interacting with others. In so finding, she discounted his reported issues interacting with others and credited reports from his examinations at the VA as describing him as friendly and appropriate. She noted that his speech "was often observed as normal" but also reflected instances of rapid speech where Mr. Kuhlman blurted out answers. AR 31. The ALJ found Mr. Kuhlman had a moderate limitation concentrating, persisting, or maintaining pace. She discounted his own reports of becoming distracted and overwhelmed when doing household chores because the VA examinations showed intact concentration and appropriate cognition. She found that those reports were not inconsistent with Dr. Odipo's observation that "there was mild difficulty with attention and concentration." AR 31.[3] The ALJ found he had a moderate limitation adapting and managing oneself. She discounted his self-reports of "manic episodes during which he engaged in dangerous behavior"

---

[3] Dr. Odipo's report expressed greater concerns. "Thought process was slow. His concentration was poor." AR 625. Dr. Odipo found that Mr. Kuhlman had marked impairments performing complex tasks without accommodations. AR 626.

7

because no medical professional observed impulsivity, evidence of inappropriate hygiene, or "evidence of inpatient mental health treatment."[4] AR 32.

Based on the limitations she found, the ALJ determined that Mr. Kuhlman could not work in his previous role as an exterminator.

*Fifth,* the ALJ determines whether the Claimant can perform any other work considering his residual functional capacity, age, education, and work experience. Only if the Claimant is unable to do other work is he considered disabled. 20 C.F.R. § 404.1520(g).

The ALJ found Mr. Kuhlman had the RFC to perform work that entailed "simple, detailed but not complex tasks not requiring a specific production rate, such as required by assembly line or hourly quota work. The assigned tasks must require only the level of judgment necessary to make simple work-related decisions. The assigned tasks may require frequent contact with supervisors and coworkers but only occasional contact with the public. The assigned tasks may be performed a work setting where there are frequent changes in the work environment." AR 32. She found that he could work as a housekeeper, laundry laborer, or floor cleaner and polisher. AR 39–40. In making this decision, she discounted Mr. Kuhlman's statements about the "intensity, persistence, and limiting effects of his symptoms" as "inconsistent with the medical evidence." AR 33.

Mr. Kuhlman exhausted his administrative remedies and appealed his adverse disability determination to this Court.

## II. STANDARD OF REVIEW

The Court has jurisdiction to review final decisions of the Commissioner. *See* 42 U.S.C. § 405(g) ("The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). The Court may disturb the Commissioner's decision to deny benefits only if the decision is not supported by substantial evidence or is based on legal error. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The

---

[4] Dr. Odipo's report indicated Mr. Kuhlman had three prior suicide attempts from 2015 to 2018, which resulted in a psychiatric hospitalization. AR 624.

threshold for "substantial evidence" is not high: "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). "The evidence must be more than a mere scintilla, but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court must consider the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). The ALJ is responsible for making determinations of credibility and for resolving evidentiary ambiguities, including conflicting medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Additionally, the Court "may not reverse an ALJ's decision on account of an error that is harmless. The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina*, 674 F.3d at 1111 (quotation omitted).

## III.    DISCUSSION

Mr. Kuhlman seeks reversal of the ALJ's decision on two grounds: first, the ALJ erred in evaluating the medical opinions; and second, the ALJ impermissibly discounted his self-reported symptoms.

### A.    The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

For claims filed on or after March 27, 2017, an ALJ does not "defer or give any specific evidentiary weight, including controlling weight to any medical opinions. . . ." 20 C.F.R. § 404.1520c(a)(1). The ALJ must assess each opinion using factors codified in the regulation. *Id.* § 404.1520c(b)(2). The only factors the ALJ is required to consider are consistency and supportability. *Id.* Consistency assesses whether a medical opinion or finding is congruent "with the evidence from other medical sources and nonmedical sources in the claim," while supportability addresses whether the medical opinions are backed up by objective findings and

observations. *Id*. § 404.1520c(c)(1)–(2). The Court finds the ALJ did not commit reversable error in its consideration of the expert opinions.

### i. Dr. Vedantham

The ALJ found Dr. Vedantham's medical opinion unpersuasive. She concluded that his February 2022 opinion regarding Mr. Kuhlman's marked limitations while manic were "based for the most part on subjective complaints, which are not consistent with the generally benign mental status examinations of record" in which Dr. Vedantham found Mr. Kuhlman to be friendly and appropriate with intact memory, speech, insight, and judgment. AR 37–38. She similarly found his June 2022 opinion unpersuasive, finding that Dr. Vedantham's office notes confirmed that Mr. Kuhlman's mental status was largely benign and stable, and that he was able to move cities without experiencing a manic or panic episode. AR 38. Here, Mr. Kuhlman argues that Dr. Vedantham's opinions were consistent with his bipolar diagnosis and that the ALJ failed to address the supportability prong.

Applying the deferential standard that controls here, the Court finds that the ALJ did not err in its consideration of this opinion. More than a scintilla of evidence supports the ALJ's finding that Dr. Vedantham's opinions were inconsistent and unsupported. *See Molina*, 674 F.3d at 1110–11. Dr. Vedantham concluded that Mr. Kuhlman had a marked limitation (meaning more than two-thirds of an eight-hour workday) in maintaining concentration for extended periods, completing a workday without symptoms, accepting instructions and responding appropriately to criticism, and being punctual. AR 630. Dr. Vedantham's office notes indicate that Mr. Kuhlman repeatedly arrived on time to his appointments, had normal concentration, was friendly and appropriate, and had logical, organized, and linear thoughts. *See, e.g.,* AR 630–31, 840. It was not unreasonable for the ALJ to conclude that Dr. Vedantham's opinion of Mr. Kuhlman's limitations was inconsistent with the notes that Mr. Kuhlman's medication regime was, after some trial and error, "working well," and that when he took that medication, his symptoms were controlled. AR 839–40; AR 37–38 (ALJ's finding); *see also Tidwell v. Saul*, 836 Fed. Appx. 523, 525 (9th Cir. 2020) (affirming conclusion that bipolar disorder well-controlled by medication did

not support a disability finding).[5]

The ALJ also found that Dr. Vedantham's opinions were not supported by his objective findings. *See Smartt v. Kijakazi*, 53 F.4th 489, 495 (9th Cir. 2022); 20 C.F.R. § 404.1520c(c)(1). She concluded that Dr. Vedantham largely reported Mr. Kuhlman's assessments of his symptoms, which did not match Dr. Vedantham's own objective assessments. AR 37–38. Dr. Vedantham's repeated objective assessments indicated Mr. Kuhlman had "normal grooming, normal hygiene, pleasant and engaging behavior, a eurythmic mood, and normal speech." AR 34 (summarizing findings). But his opinion indicated that Mr. Kuhlman was often manic or depressed, which affected his concentration and memory, and made it difficult to maintain any work or life consistency. AR 627–31.

The ALJ carefully considered each of Mr. Kuhlman's appointments with Dr. Vedantham, assessed Dr. Vedantham's opinions, and compared those opinions to Dr. Vedantham's observations. AR 32–38. She grounded her conclusion in appointment notes beginning in October 2021 through September 2023, well after the insurance expiration date. AR 33–37. The ALJ's assessment of the evidence was based on the trend of reports and observations, and she found that Dr. Vedantham's opinions (for example, that when manic Mr. Kuhlman would have "nonexistent" concentration and an inability to complete tasks) were neither consistent with the medical record nor supported by his observations. This analysis met the substantial evidence standard. *Wischmann v. Kijakazi*, 68 F.4th 498, 504 (9th Cir. 2023) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) ("[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."); *see also Ford v. Saul*, 2020 WL 829864 at *9 (9th Cir. 2020) (explaining that "[a] conflict between a treating physician's medical opinion and his own notes is . . . a specific and legitimate reason for rejecting it").

### ii. Dr. Odipo

The ALJ found psychologist Dr. Odipo's opinion partially persuasive. AR 38. Dr. Odipo concluded that Mr. Kuhlman did not have significant cognitive or memory problems, and could

---

[5] While this and the other unpublished dispositions cited in this order are not precedent, the Court may consider them for their persuasive value. Fed. R. App. P. 32.1; CTA9 Rule 36-3.

perform one or two step repetitive tasks, but had moderate restrictions accepting instructions and criticism, interacting with the public, and maintaining regular attendance without accommodation. AR 626. Dr. Odipo concluded Mr. Kuhlman had marked limitations performing complex tasks and handling normal work-related stress. *Id.* The ALJ found that Dr. Odipo's conclusion regarding adaptation was largely based on Mr. Kuhlman's self-report and did not consider that he is the primary caretaker for his daughter while his wife works from home.[6] AR 38. The ALJ found that there was not "specific support" for a moderate limitation in accepting instructions from coworkers,[7] but she agreed that Mr. Kuhlman has moderate limitations interacting with others (crediting reports of mood fluctuations, irritability, and anger). AR 38.

Mr. Kuhlman contends the ALJ's residual functional capacity finding failed to account for all of the restrictions Dr. Odipo found and failed to provide sufficient reason for disagreeing with Dr. Odipo's findings regarding adaptation.

Mr. Kuhlman first argues that the ALJ failed to recognize his limitations performing more complex tasks and interacting with others, then failed to incorporate them in the RFC findings. The Court disagrees. In the RFC findings, the ALJ found that Mr. Kuhlman was "limited to simple, detailed but not complex tasks not requiring a specific production rate, such as required by assembly line or hourly quota work," and further found that any assigned tasks "may require frequent contact with supervisors and coworkers but only occasional contact with the public." AR 32. This closely reflects Dr. Odipo's findings that Mr. Kuhlman "[i]s able to adequately perform one or two step repetitive tasks," "[h]as difficulty performing complex tasks adequately without accommodations," and "[h]as difficulty accepting instructions from supervisors and interacting with coworkers and the public." AR 626. Those moderate social limitations, partially accepted by the ALJ, are reflected in her reasoning and were supported by substantial evidence.

Mr. Kuhlman also argues that the ALJ wrongly discounted Dr. Odipo's opinion regarding

---

[6] "Adaptation" refers to a claimant's ability to "respond appropriately to workplace changes," "be aware of hazards and take appropriate precautions," "travel to unfamiliar places or use public transportation," "set realistic goals," and "make plans independently." *See, e.g.,* AR 630.

[7] "I do not find specific support for the opinion limitation that the Claimant has moderate limitation accepting instructions from coworkers." AR 38.

adaptation. The Court assesses that opinion for consistency and supportability. *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022); 20 C.F.R. § 404.1520c(a). The ALJ found that Dr. Odipo's adaptation opinion was inconsistent with the record. While Mr. Kuhlman's wife worked, Mr. Kuhlman cared for his children, performed household chores when given a list, and could drive to the store and shop on his own. These facts appeared throughout the record. *See, e.g.,* AR 59–61. And Dr. Odipo's office notes indicated that Mr. Kuhlman "has no difficulty completing household chores." AR 626. While Mr. Kuhlman argues that one need not be a "raving maniac" to be disabled, Dkt. No. 12 at 3 (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008), the relevant question is whether these types of capabilities in completing tasks at home are "transferrable to a work environment." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim*, 763 F.3d at 1165. The ALJ found that Mr. Kuhlman's activities showed he had some abilities that could transfer to a work environment, and that his contrary claims were inconsistent with the severity of symptoms alleged. The record showed that his daily activities included accepting a list of tasks from his wife, completing simple tasks, and caring for his small children. AR 33, 38, 40.

Again, even assuming that the record could support different conclusions, substantial evidence supported the ALJ's opinion regarding Dr. Odipo's conclusions. *See Ghanim*, 763 F.3d 1159-60; *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

### iii.   Dr. Marciano

The ALJ found Dr. Marciano's opinion unpersuasive as similarly inconsistent with Mr. Kuhlman's mental status examinations and lacking supportable evidence from her examination.[8] AR 38. The ALJ concluded that Dr. Marciano failed to make objective findings of her own and

---

[8] It is not entirely clear whether Plaintiff challenges the ALJ's findings regarding Dr. Marciano's opinion. *See* Dkt. No. 7 at 15. The Court addresses the issue here for completeness.

1  relied on his self-reported history. AR 639–46. Dr. Marciano's conclusions were similarly
2  inconsistent with the mental status examinations. AR 38. Substantial evidence supported the
3  ALJ's conclusion that Dr. Marciano's opinion was inconsistent and unsupported.[9] *See Molina*,
4  674 F.3d at 1110–11.

        **iv.    Non-Examining Consultants**

        Mr. Kuhlman alleges the ALJ "erred by giving the greatest weight to opinions from non-examining state agency medical consultants." Dkt. No. 7 at 14–15. For claims filed after March 27, 2017, the ALJ is required to evaluate medical opinions—regardless of their source—based on their supportability and consistency. 20 C.F.R. § 404.1520c(a), (c)(1)–(2). The ALJ in this case identified objective medical evidence that contradicted the claimant and supported the non-examining consultants' findings. *See Coelho v. Astrue*, No. C 10-2102-JSW, 2011 WL 3501734, *8 (N.D. Cal. Aug. 10, 2011) (affirming ALJ's decision on this basis); *Mangrum v. Kijakazi*, No. 1:20-CV-00932-BAM, 2023 WL 2088445, at *8 (E.D. Cal. Feb. 17, 2023) ("Unlike those cases where the record showed minimal to no contradictory evidence, the ALJ here cited the clinical examinations [and] treatment records . . . ."). The ALJ found the nonexamining opinions persuasive because they were consistent with the benign mental status examinations, the course of Mr. Kuhlman's mental health treatment, and the record showing his symptoms were stable. AR 39. The evidence may be "susceptible to more than one rational interpretation," but the ALJ's interpretation was rational. *See Thomas*, 278 F.3d at 954.

        Mr. Kuhlman argues that the state consultants examined an incomplete record, which might make those opinions "more or less persuasive." Dkt. No. 7 at 14 (citing 20 C.F.R. § 404.1520c(c)(5)). But Plaintiff does not explain what later evidence would have made the consultants' opinion less persuasive, Dkt. No. 7 at 14–15, and as noted throughout this order, the necessary substantial evidence supported the ALJ's findings.

        **v.    Attendance Opinion**

        Mr. Kuhlman argues that the ALJ failed to consider the expert opinions regarding his

---

[9] Marciano's report, dated November 2022, was prepared six months after Mr. Kuhlman's insurance expired. AR 36.

ability to maintain regular attendance, and asserts that he would miss too many days per month to be employable. In Dr. Vedantham's opinion, Mr. Kuhlman would miss 2–3 days of work per month due to his mental health condition, AR 631; Dr. Marciano believed he would miss more than 3 days per month, AR 652; and Dr. Odipo deemed Mr. Kuhlman "moderately restricted" from maintaining regular attendance and would benefit from accommodations. AR 626. The vocational expert testified that someone who would miss 2–3 days of work per month due to psychiatric conditions was unemployable in any job. AR 73–74.

The ALJ found Dr. Marciano's opinion wholly unpersuasive, expressly addressed this limitation when considering Dr. Vedantham's opinion and found it unpersuasive, AR 37, and noted that Dr. Odipo offered a similar but less restrictive opinion. AR 35, 38. Dr. Odipo expressed that Mr. Kuhlman would need accommodation only when he was in a manic state, *id.*, which the record shows was being managed by an effective medication regime. *See, e.g.* AR 763. The ALJ did not err in not specifically addressing this argument, because her prior findings made clear that in her view Mr. Kuhlman was not limited to the extent discussed in the hypothetical posed to the vocational expert.

### B.     Claimant's Testimony

In assessing a claimant's subjective testimony, the ALJ must engaged in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014–15. The question is not whether this Court writing on a blank slate would reach the same conclusion as the ALJ, but whether the ALJ's rationale is clear enough that it has "the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence. *Lingenfelter v. Astrue*, 504 F.3d 1025, 1040 (9th Cir. 2007).

Ultimately, the 'clear and convincing' standard requires an ALJ to show their work. *Smartt*, 53 F.4th at 499. "Contradiction with the medical record is a sufficient basis for rejecting claimant's subjective testimony." *Brokaw v. Bisignano*, No. 24-6710, 2025 WL 3158801, at *1 (9th Cir. Nov. 12, 2025) (quoting *Smartt*, 53 F.4th at 499).

The ALJ concluded that Mr. Kuhlman has medically determinable impairments that could reasonably be expected to cause the alleged symptoms. However, she found that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 33. Mr. Kuhlman testified that he "frequently feels like he is in circles when attempting to follow instructions," has difficulty dealing with others, and felt that people did not like him. *Id.* He also testified that his manic episodes prevent him from doing things and cause him to do dangerous things. *Id.* In a typical day, he testified that he feeds his three-year old and infant breakfast, picks up around the house, plays with the children, drives to the grocery store, and shares in food preparation responsibilities with his wife. *Id.* The ALJ found that Mr. Kuhlman's statements regarding the severity of his symptoms did not align with the medical record for the same reasons that she discounted the medical opinions: he appeared friendly and appropriate, he lacked debilitating concentration and impulsivity problems, his condition improved with medication, and his daily activity showed a level of adaptability. *See supra* § III.A.

Mr. Kuhlman argues that the ALJ discounted his testimony because "the available objective medical evidence does not substantiate" the statements, suggesting that the ALJ improperly *de facto* relied only on medical test results. But that is not quite true. For example, Mr. Kuhlman's statements to his doctors showed that he was improving with medication. AR 763. He also testified to an ability to perform tasks around the house while his wife is working. He stated that it was easy for him to be distracted and overwhelmed, AR 60, but he was able to do day-to-day tasks and follow through on whatever his wife asked of him. AR 61, 233. It was thus not unreasonable, under the deferential standard that applies here, for the ALJ to find that Mr. Kuhlman's testimony was not entirely consistent with the medical record and his past statements. *Smartt*, 53 F.4th at 494 (quoting *Garrison*, 759 F.3d at 1014–15 ("When objective medical

16

evidence is inconsistent with a claimant's subjective testimony, an ALJ can 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so.'").

***

The Court thus **DENIES** Plaintiff's motion to reverse the ALJ's decision. Dkt. 1. The Court affirms the Commissioner's decision below. This order **TERMINATES** docket numbers 7 and 12. The Court is **DIRECTED** to enter judgment in favor of Defendant and close the case.

**IT IS SO ORDERED.**

Dated: 12/9/2025

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge